### BROWN *v.* BD. OF COM. OF JOHNSON CO.

A county order, payable out of a special fund to be created, is not due until the fund is created; and judgment cannot be rendered upon it, unless that fact is established; nor does such an order draw interest before the fund is created.

A county order, payable on presentment to the treasurer, is due, and draws interest from the date of such presentment.

ERROR, *to Johnson District Court.*

*R. P. Lowe,* for the plaintiff in error.

*Curtis Bates,* for the defendant.

*Opinion by* HASTINGS, C. J.   This was an amicable suit, originally instituted in the county of Johnson, and submitted to the court upon an agreed statement of facts and testimony.   By the agreement: it appears that the plaintiff was the holder of a large amount of orders drawn by the defendants on the treasurer of the county of Johnson, which were presented to him for payment.   Two questions were, by the agreement, to be submitted to the court.   1. Can an action be maintained on such paper ?   2. If so, do such orders draw interest?   If an action could be maintained, judgment was to be rendered.

The following are copies of two of the orders, which are described in the agreed statement of facts, and the only orders submitted to the consideration of the court.

"Territory of Iowa, ⎫
  Johnson County, ⎬ *ss.*
                    ⎭

"COMMISSIONERS' OFFICE, ⎫
July Session, 1842.  ⎬
                       ⎭

"The treasurer of Johnson county will pay to Jesse B. McGrew fifty-six dollars, out of any moneys in the county treasury, not otherwise appropriated.   By order of the board of commissioners.

"Attest,      STEPHEN B. GARDNER, *Clerk.*"

Brown *v.* Johnson Co.

"COMMISSIONERS' OFFICE,      ⎫
                                               ⎬ ss.
Oct. Session, 1841, No. 291. ⎭

"Agent of the county of Johnson, pay to Wesley Jones &
Co., one hundred and thirty-three dollars and sixty-two and
one-half cents, out of any moneys in your hands arising from
the sale of lots in the county seat of Johnson county, Iowa
Territory, now sold, or to be sold·hereafter.   Per order of the
board of county commissioners, (on jail contract.)

"Attest,      STEPHEN B. GARDNER, *Clerk.*"

There does not appear to be much difference in the legal
effect of the orders above described.   Each is to be paid out
of a fund which is uncertain, and on an event which may
never happen.   Without, then, the assistance of a statute,
no action could be entertained on such orders, they being
neither bills of exchange nor promissory notes.   See Chitty
on Bills, 158, and notes.   But the statute makes all instru-
ments of writing, whereby a sum of money is acknowledged
to be due, a promissory note, or bond, or bill, assignable, and
liable to be prosecuted to judgment in the hands of the assignee.
If these orders then were due at the time of the institution of
this suit, judgment was rightly rendered upon them.   It does
not appear from the evidence and agreed statement of facts,
that the events have happened when these orders should be-
come due and payable.   We think, therefore, that judgment
ought not to have been rendered for the principal due on the
orders, and that an action was not then, at the institution of
the suit, maintainable on the same.

But the most important and difficult question to settle is,
whether such orders draw interest, and upon this subject
there seems to have been as yet but few decisions, and we
must be governed by general principles regulating interest
on money, rather than specially adjudicated cases cited as
authority.

In the case of the *Glass Factory* v. *Reid*, 5 Cow. R. 588,
much light was shed upon the perplexing questions relating

Brown *v.* Johnson Co.

to interest on money by senator Spencer, and certain principles were laid down by this very able jurist, which will not be controverted, viz. : That an agreement to pay interest may be implied from the custom or usage of the business in which the debt is contracted; and that when such custom is known to the parties, or may reasonably be presumed to have been known, it enters into the original contract, and forms part of it. See the authorities referred to in that case.

And on the same principle, when interest has under like circumstances been allowed by the debtor to other creditors, the knowledge of which comes to the creditor in the given case, and he acts in expectation of a similar allowance, there would be good ground to presume an agreement to pay interest also to the new creditor.

The statute, however, regulating interest on money, and the statutes relating to the finances of counties and the duties of the various county officers, must mainly settle the questions presented in this case.

The board of commissioners are by statute made a body corporate and politic, capable of suing and being sued, and when they credit and allow a debt against the county, we know no good reason why interest should not be allowed upon such debt, from the time the same becomes liquidated and due.

The allowance of interest often becomes a question of equity.

Interest on money was not tolerated at common law. It was condemned in all catholic countries under the odious term of usury, and not permitted in England until the reign of Henry VIII. Its odious character has however yielded to the more sensible demands of trade and commerce, and by common consent, in most commercial countries, it is now regarded as much the right of the creditor, as the principal itself after the debt is due.

It is no longer looked upon as a penalty for a wrong in the delay of judgment, but as an incident to the debt after due, and as much the right of the creditor as the principal itself,

and is a part of the contract, whether so expressed or not. In the case cited from 1 Scam. 67, the court seem to consider interest as penalty for a wrong committed by the debtor, in failing to pay ; and for the reason that the state cannot be guilty of laches, a county can be guilty of no laches by delay in the payment of its debts, and therefore is not liable to payment of interest.

This reasoning appears to us fallacious. The premises are wrong, and therefore the conclusion is erroneous.

The legislature has made the board of commissioners of a county capable of suing and being sued, and evidently contemplates a crisis when the board may be in the wrong, and of their being sued for redress of such wrong.

The court in the case from Scam., for other, and we believe more plausible reasoning, sustain the decision in that case.

The court say, " It might also with propriety be insisted, that the financial means of the respective counties to discharge their debts, were or could have been known by those persons who, either as officers or individuals, became creditors to the county. They may therefore be presumed to have consented to receive the payment of their claims, whenever the revenues of the county would enable it to pay its debts. If this is a reasonable presumption, and it seems to be, then the time of payment of their orders did not arrive until there was money in the treasury to pay them, and provision is made by statute to pay orders according to their seniority."

Our statute has similar provisions relative to the payment of orders according to seniority.

The one order in this case, expressly provides that it is to be paid out of any money not otherwise appropriated. The meaning of which is, that the money is not to be due until funds shall remain in the treasury, (after the payment of senior orders,) sufficient to pay the same. The money is not due on the order, until the happening of that event. The creditor, by accepting of such order, agrees to the condition

upon which it is drawn, and is not entitled to interest until the event happens; when, if payment should be delayed or refused, he would certainly have a right to interest. The facts that the plaintiff paid but fifty cents on the dollar, that the county of Johnson has never paid interest on such orders, that orders have always been below par, show that the plaintiff is not equitably even entitled to interest. He has already received fifty cents on the dollar in consideration of the postponement of the time when the order shall become due.

In some counties in this state orders are drawn by the boards of commissioners upon the treasurer, to be paid on presentment and without any qualifications. In some counties orders are drawn in both forms. When orders are drawn without the words of limitation as to payment, interest is usually allowed, and we think with great propriety.

The board of commissioners, in such orders, undertake that money is in the hands of treasurer to pay the same; and having the control of the revenues of the county, and for the purpose of giving them character and value, and to be enabled to procure services and property at their true value, they make such orders due on presentment to the treasurer, and from that time pay interest on the same.

The conclusions then to which we are drawn are: 1. That a county order payable out of a fund not otherwise appropriated is, not due until such a fund shall exist, and not being due, does not draw interest until after that event happen, and demand and refusal.

2. That a county order payable on presentment to the treasurer without any such limitation is due after presentment to the treasurer, and draws interest thereafter unless paid.

3. That neither of these orders being due when this suit was instituted, the action was not then maintainable.

The judgment therefore of the court below, refusing interest, is affirmed, and that part of the judgment in favor of the plaintiff for the principal, is reversed.

GREENE, J. dissenting. The reasoning of the opinion in this case I mainly approve, but cannot arrive at the same conclusions. ·Indeed, I think the second concluding proposition shows the incorrectness of the decision. If a county order payable on presentment draws interest, then are the orders in this case entitled to interest. The first order copied in the opinion directs the treasurer, in unqualified terms, to pay the amount of the order out of any funds in the treasury not otherwise appropriated. This is in the usual form of a treasury order. . There is no contingency, no special fund adverted to ·in the order. It is for funds *in* the treasury, funds *in esse*, and not for funds that are to be placed there, at some future day, out of some contingent resource. To my mind, it is as clearly payable on presentment as any order can be. The first section of the interest law, *Rev. Stat.* p. 293, provides that creditors shall be allowed interest at the rate of six per cent. " on money due, or settlement of accounts, from the day of liquidating or ascertaining the balance due thereon." The money is due —the account is liquidated, from the moment the allowance is made by the commissioners and the usual order of payment is entered upon their record. Without an order upon the treasurer, then, the creditor is entitled to interest, and without such order he may sue before any court of competent jurisdiction for the recovery of his demand and interest. Can the fact that he takes an order militate against his right to sue or to recover interest? It is conceded that the order without payment is no satisfaction of the claim; and the decisions of this court show that a party may file such an instrument for cancellation, and recover on the original demand. It is clear, then, that the nature and merits of the indebtedness will justify a recovery of interest. What is there in the order itself that· can preclude such recovery? It is an additional assurance—an acknowledgment of the indebtedness. The clear import of its language is, that the drawers have funds in the hands of the drawee, from which payment is to be made to the payee. If those funds are not

there, it is not the fault of the payee or holder of the order; his claim still holds against the drawer; and I believe, upon every principle of justice and correct law, he is entitled to interest at the established rate till payment is made. If such an instrument cannot become due till particular funds are placed in the treasury for its particular payment, the drawers of the order having the management and appropriation of those funds, have the power in their own hands to guard forever against the contingency upon which payment would depend. They could manage to have no funds in the treasury not otherwise appropriated. Law and reason cannot be compatible with a construction which leaves room for the perpetration of such fraud and injustice.

Upon the other order there is more room for doubt; but as such instruments are always to be construed strongest against the maker, I do not regard the disjunctive proposition, "or to be sold hereafter," as deferring the day of payment to an indefinite contingency. As the order directs the payment to be made by the agent out of "money in his hands arising from the sale of lots *now* sold," it removes all contingency, and creates a pending liability against the drawer upon which interest should be allowed. I consider the plaintiff·in error entitled alike to an action and to interest upon the orders.

The prevailing argument in the opinion of the court and the authorities cited do not, in my opinion, support their conclusion.